# EXHIBIT A



David Blaine

[REDACTED]

February 10, 2014

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 1105
New York, NY 10007

      Re: United States v. Nicholas Hirsch, 13 Cr. 268 (JMF)

Dear Judge Furman:

My name is David Blaine and I am a magician. I have known Nicky for almost 20 years
and he is one of my closest friends. I was truly shocked when I first heard about the
trouble Nicky was in. It is simply incompatible with the person I know him to be. So
when I found out Nicky's lawyer was collecting letters for the court, I insisted on
submitting this letter to provide Your Honor with a view of the Nicky I have known for
so many years.

I met Nicky 20 years ago, long before I had a successful career as an entertainer. Despite
coming from vastly different backgrounds, Nicky and I instantly became friends. He
immediately welcomed me into his family's home and his large circle of friends.

Almost 20 years later, despite our respective professional successes, our relationship
remains the same. This is one of Nicky's most admirable characteristics; he treats
everyone equally, regardless of their background, social status, or financial wherewithal.
Over the years, I have introduced Nicky to people from a wide variety of backgrounds,
and I am always impressed by how warm and genuine he is to people without any
consideration of their station in life. Simply put, Nicky has never been impressed with
such things.

As a magician, I often organize free magic shows for children and adolescents confined
to hospitals and other institutions, and I regularly have the pleasure of Nicky's assistance
at these events. Over the last several years he has insisted on joining me when I perform
at venues such as the Children's Hospital at NYU Langone Medical Center, Memorial
Sloan-Kettering Cancer Center, Bridges Juvenile Center in the Bronx, and the Ronald
McDonald House. Nicky also frequently accompanies me in my office in Manhattan
where I host sick children in a more intimate setting. Nicky is a wonderful partner in
organizing and executing these events, as he genuinely loves bringing joy to these
children. I am always moved by how Nicky's compassion and dedication can help these

STACKED PRODUCTIONS, LLC

[REDACTED]

david blaine

children forget the difficulties they are experiencing and allow them to feel like normal kids, even for just a little while.

Since his arrest, Nicky and I have discussed how he is determined to use this experience in a positive way. His commitment is genuine and infectious. I have watched how these kids relate to Nicky and believe it would do them good to hear his story.

I truly believe the best use of Nicky's time is helping others avoid the problems that have brought him before this court. I hope that Your Honor shows mercy in allowing Nicky to begin the process of healing and sharing his experiences.

Sincerely,

David Blaine

# EXHIBIT B

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 1105
New York, NY 10007

      re:   United States v. Nicholas Hirsch, 13 Cr. 268 (JMF)

Dear Judge Furman:

 I first met Nicholas Hirsch approximately five years ago through an introduction by a mutual friend, and it is without any hesitation whatsoever that I am writing this letter to attest to his character. It is an honor to come forward in his support, as I am sure there is no shortage of those who would be willing to do the same for someone who is so universally well regarded.

I feel fortunate that I met Nicholas shortly after moving to New York from London, as he has become someone on whom I rely for advice in matters both personal and professional. During my professional career which includes my current position as a partner at Toscafund Asset Management and previous employment at the Blackstone Group, I have never encountered anyone who is as adept as Nicholas at dispensing advice. He was the first person I turned to when dealing with a delicate personal matter regarding a friend with a mental illness, and his unique ability to balance moral fortitude and intellect with generosity and kindness enabled him to give me perfect advice in handling this situation.

I also understand the charges to which Nick has plead guilty and I am certain that this was a one-time aberration from his usual sterling character. My absolute confidence in that statement is demonstrated by the fact that I am working with him on an important business transaction at present and would have no hesitation in doing so again in the future.

He is someone who possesses many talents that are a value to society, and any restrictions placed on him that would inhibit his contributions would be a travesty.

Respectfully submitted,

J. Joseph Chai

cc:   Craig Carpenito, Esq.

       Harris Fischman, Assistant U.S. Attorney

# EXHIBIT C



55 Lane Road
Fairfield, NJ 07004
Tel: 917-972-6358
Fax: 973-227-7461
www.continuitylogic.com

**The Honorable Jesse M. Furman**
**United States District Court**
**Southern District of New York**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square, Courtroom 1105**
**New York, NY 10007**

Re:    **United States v. Nicholas Hirsch, 13 Cr. 268 (JMF)**

Dear Judge Furman:

As a friend to Nick Hirsch and his family for 28 years, I write to the Court to attest to the high character, strong ethics, and extreme integrity that I know to be the traits of Nicholas Hirsch.

Briefly, my professional background of 39 years includes four years as a Vice President of The First Boston Corporation (now Credit Suisse) and nine years as a Managing Director of Paine Webber Incorporated.  My role was to profitably manage the Mortgage Securities and Fixed Income Research businesses for the firm.  For four of those nine years, I also served as a Member of the Board of Directors of PaineWebber Incorporated.

I left PaineWebber to co-found and manage, as President and CEO, a billing output company, ComTec Incorporated.  I sold ComTec to a strategic buyer for $26 million.  I am currently the Chairman and Co-Founder of Continuity Logic LLC, an enterprise software and services company, offering advanced, automated workflow software for the Governance, Risk and Compliance (GRC) markets.  We have clients such as Capital One, Lincoln Financial and Time Warner Cable that rely exclusively on our GRC software for their worldwide operations.

I mention my background because I am familiar with the ethical requirements of the securities industry, as a former Managing Director and Member of the Board of Directors of a major securities firm, and as the leader of a highly advanced compliance management software company, that offers compliance solutions to the securities industry (in addition to other industries).   Aware of the SEC requirements for conduct, I have dismissed many employees over the years for bad behavior.  With full knowledge of SEC standards of conduct required of people in the securities industry, I believe that Nick's conduct in the

current legal matter contrasts starkly with the conduct that I have seen in him over the years. In my professional estimation, he is a man of the highest character, integrity and ethics.

To support my opinion, I cite his sterling reputation in the financial industry. He was held in exceptionally high esteem by the executive management team of his long-time employer, Atlas Capital Services, LLC and Halter Financial Group. It was not simply Nick's intelligence and hard work that impressed his bosses. Rather, they worked with Nick every day for many years and they concluded that he was a reliable steward of their regulatory and ethical obligations.

As for myself, having deep experience in enforcing standards of conduct on Wall Street, I believe that I am qualified to critically evaluate the character of financial professionals. I have observed Nick's conduct and positive personality traits throughout his life, and I personally and unconditionally vouch for his strong character, ethics, and integrity. I also know that Nick is extremely remorseful for his breach of trust and his conduct. In his conversations with me, he accepts full responsibility for his actions.

It is my opinion that this breach on the part of Nick is an exception to his otherwise exceptional conduct. If allowed to express an opinion to the Court, I recommend that he be dealt with leniently, so that he may move on with his purposeful life.

Respectfully submitted,

Peter E. Christensen
Chairman
Continuity Logic LLC


cc:   Craig Carpenito, Esq.
      Harris Fischman, Assistant U.S. Attorney

# EXHIBIT D

MARVIN H. CHUDNOFF

January 29, 2014


The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Squire, Courtroom 1105
New York, NY 10007

Dear Judge Furman,

This is the first time in my lifetime (73 years) that I have been asked to pen a
note to a court regarding the character and integrity of an individual. What
is of greater surprise to me is that I am writing on behalf of Nicholas Hirsch,
a gentleman who has conducted himself with honor and maturity in all
matters that I have observed. I have known this young man for his entire
life, the sincerity, the thoughtfulness, the candor and kindness that I have
witnessed these 35 years stands in stark contrast to the behavior and acts that
now haunt him.

I am currently semi-retired having spent almost 50 years as a real estate
investor and developer in New York City and the North East. During my
career I was the Vice Chairman of the Edward S Gordon Co. with 600
employees and the Chairman of the Board of the Balcor Co. with 4500
employees. One of my responsibilities was the recruiting and hiring of top
tier executives for both companies. Today, although somewhat abbreviated,
I still build and develop in the Albany Area and have Approximately 75
people in my employ. I mention the above for no reason other than to
hopefully bolster my bona-fides in the judgment of people and more
specifically Nick Hirsch.

Yes he has strayed and yes his feelings of deep contrition have been shared with me on many occasions.  I believe that the Nick that I have known, the young man who emotionally supports his two brothers, who is a loving and caring son and whom I consider a friend has learned a costly lesson.  The actions of this case are inexcusable but in a greater sense I am sure a life lesson has been learned.  Let Nick's pain serve a better purpose.  He will, I am certain, make a good citizen going forward.

Respectfully Submitted,

Marvin H Chudnoff

Cc:  Craig Carpenito, Esq.
        Harris Fischman, Assistant U.S. Attorney

# EXHIBIT E

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 1105
New York, NY 10007

        Re:    United States v. Nicholas Hirsch, 13 Cr. 268 (JMF)

Dear Judge Furman:

My name is Kira Cohen and I am proud to call myself a very dear and old friend of Nicholas Hirsch's. Nicky and I met when we were 15 years old through mutual friends who attended high school with him. We immediately became close due to his exuberant and loving disposition. Soon after becoming friends with Nicky, I met his family, and they have opened their home to me for many dinner and holiday gatherings. The warmth, love, and acceptance that pour out of his entire family is so thoroughly satisfying and infectious that I feel like I have known them forever. In fact, years later when we introduced our parents to each other, we found that our fathers had worked together in advertising years prior.

I had a daughter almost four years ago. Because she was one of the first children in our group of friends, she would find herself without anyone to play with at summer family BBQs and traditional holiday gatherings. Not surprisingly, she was always drawn to Nicky -- looking for him to play, asking for his assistance with tasks too advanced for her, or simply wanting to sit on his lap. My daughter must have innately sensed what drew me to Nicky so many years ago: his gentle warmth and true compassion for those around him. These are not things I needed to teach my daughter about Nicky; they are simply things a young child senses and knows to be true. Of course, Nicky never disappoints her. Nicky not only indulges in her requests, but, far more importantly, he stops what he is doing and invests quality time to do things with her that make her feel special. There are so many special moments, but one stands out from the rest. About two years ago my daughter and I were at a friend's annual tree trimming party. My daughter was decorating the tree, but could only reach the bottom branches. Nicky, noticing her height limitation, stopped what he was doing and spent the rest of the evening picking her up to reach the rest of the tree. It delighted my daughter and warmed my heart.

Today I find myself a single mother of a powerful little girl. I work hard to teach her the importance of recognizing right from wrong. I try to be the best possible role model I can, and I surround her with people who can instill in her the solid values that she will need as she grows up. I can say whole heartedly that Nicky possesses these values and routinely demonstrates them to my daughter. We are both very lucky to have Nicky in our lives.

Respectfully submitted,

Kira Cohen

cc:    Craig Carpenito, Esq.
       Harris Fischman, Assistant U.S. Attorney

# EXHIBIT F



**HALTER FINANCIAL GROUP**

12890 HILLTOP ROAD
ARGYLE, TEXAS 76226

January 29, 2014

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 1105
New York, New York 10007

Re: United States v. Nicholas Hirsch, 13 Cr. 268 (JMF)

Dear Judge Furman:

We are writing this letter as a personal character reference for Nicholas Hirsch. We are aware of the legal matters in which Nick is involved. Nick joined Halter Financial Securities in 2009 and we had the opportunity to work with him on a professional level up until the entity's dissolution in 2013. As the parent company of Halter Financial Securities, we had the pleasure of working with Nick on a regular basis. We consider him to be an upstanding person, and he was a tremendous asset to the broker/dealer.

Nick was President of the firm and was responsible for its day-to-day operations. He always conducted himself in a professional manner and was highly respected by his associates. The record keeping and compliance demands of Halter Financial Securities were especially demanding; meticulous records were necessary to the success of the firm. Nick was entrusted with this substantial task, and through his scrupulous work ethic, he succeeded in keeping the firm compliant, as evidenced by the firm always successfully passing FINRA review. Nick always had the respect and trust of his ownership group and the firm's investment banking clients.

Nick's professionalism, diligence and ethics were highly valued.

Sincerely,

George L. Diamond
Principal and General Counsel
Halter Financial Group

# EXHIBIT G



NEW YORK
Epilepsy&NeurologyPLLC

223 East 34th Street • New York, NY 10016 • 646-558-0800 • fax 646-385-7164

January 21, 2014

Re: Gerard Jeffrey

To whom it may concern,

Gerard Jeffrey has been under my neurological care for a longstanding history of generalized epilepsy, including generalized tonic-clonic seizures. These seizures can cause significant injury and may be fatal. Living with another individual who is knowledgeable about epilepsy and seizure first aid can be potentially lifesaving, and prevent Sudden Unexpected Death in Epilepsy (SUDEP).

Sincerely,

Orrin Devinsky MD
Director, NYU Epilepsy Center
Professor of Neurology, Neurosurgery,
And Psychiatry

# EXHIBIT H

February 9, 2014

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 1105
New York, NY 10007

      Re: United States v. Nicholas Hirsch, 13 Cr. 268 (JMF)

Dear Judge Furman:

It is my pleasure to submit this letter to the court attesting to the exemplary character of my friend and previous business colleague Nicholas Hirsch.

First, I would like to provide some professional background.  Since my retirement from full time corporate employment in 1997, I have specialized in undertaking interim senior executive assignments to assist challenged or emerging businesses through difficult times. I have run organizations with 5,000 employees as the COO, and have also helped the most modest of "startups" through their initial launch. I am only brought in when a business is going through tough times. I believe that this gives me some unique experience in that when an enterprise is facing its most significant challenges I have observed that it can bring out the best, and the worst, in an individual's character. I have worked closely with literally thousands of business people in very high stress situations over the past 15 years.  It is with this perspective that I would like to speak on Nick's behalf.

I worked with Nick from 2008 to 2012 at Halter Financial Securities where he served as a senior executive and my colleague.  Besides supporting the firm's core mission of assisting emerging companies with capital formation, Nick was responsible for operating in full compliance with all FINRA regulations and SEC laws. Nick performed his duties admirably, and I can attest to several times where he took on a great deal of personal work to assure that he and our firm were fully compliant. Nick has always operated with complete professional and personal integrity.  We trusted him to be on the right side of things, and he did so during some of the most tumultuous times ever in the financial markets. He never once took "easy" instead of "right."

Lastly, I would like to convey some information about my current business assignment which involves supporting law enforcement at both the Federal and local levels. I am currently serving as the President of National Security Resources, LLC, a biometric systems (facial recognition) provider that specializes in providing security solutions to law enforcement. We are currently assisting the Federal Bureau of Prisons in mitigating some major security concerns that involve correctional officer and facility safety. I am personally involved with the US Marshall's Service in a new prototype system designed for Federal Circuit courts to enhance the safety of all involved. Lastly, at the local level, we are assisting county sheriffs with alias detection and early warning to officers in patrol cars about dangerous individuals. I

have a better appreciation than most of our law enforcement and justice communities and the need to protect our citizenry and public servants from some very bad people.

My work with the Federal Bureau of Prisons has given me great understanding into the need for incarceration for appropriate punishment, rehabilitation and to protect our citizenry from dangerous individuals. I recognize that I do not have your Honor's full understanding of Nick's situation, but I do understand that I know Nick as a serious, highly ethical person. If he has made mistakes, I have no doubt that he will take responsibility for his behavior and, more importantly, dedicate himself to righting any wrongs. To that point, I understand that Nick is fully prepared to do significant outreach to younger aspiring business people to warn them of how mistakes like his can bear serious and significant personal consequences. I hope that your Honor will allow me to respectfully offer my considered opinion, that, as one who has a great deal of empathy for the interests and challenges of our justice and law enforcement communities, I believe that there would be no benefit to either Nick or our citizenry in sending Nick to prison.

Please allow me to confirm my opinion that Nick Hirsch is an individual of very high character, integrity and honor.

Thank you for your consideration of my letter,

Respectfully submitted,

James H. Groh

Cc:    Craig Carpenito, Esq.
       Harris, Fischman, Assistant U.S. Attorney

# EXHIBIT I

January 27, 2014

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 1105
New York, NY 1007

Re: United States v. Nicholas Hirsch, 13 Cr. 268 (JMF)

Dear Judge Furman:

I am Barry J. Hirsch, the father of Nicholas Hirsch. Although the request to write this letter is an emotional one for me, based on the circumstances, it is not a hard one to write.

It has always amazed me how many friends Nicky has made throughout his life. Many of his friends today are still those he made in childhood—true friends, both men and women, with whom he shares deep and committed relationships. In recent years, Nicky has traveled not just around the United States, but to other countries to attend weddings and family events of his friends, including a trip to Israel to attend his friend Ben Steiner's father's funeral.

It's easy to understand why Nicky has such a network of friends. When you first meet him, you immediately sense his humor, warmth, and his easy and relaxed personality. People respond to him genuinely and affectionately, something my wife and I have always noticed and admire. We've also been aware of what we call his "generous gene," if there is such a thing. I remember an incident from when he was about 11 years old, when we were walking in midtown Manhattan with our older son Brian (seven years Nicky's senior) and Nicky tapped my hand: "Dad, can I have five dollars?" "Why?" I asked. "You see that homeless man over there? I'd like to give it to him." "Can't you give him a dollar?" I replied. "NO!" said Nicky emphatically. "He really needs food and that costs more. You can take it out of my allowance, can't you?" I rolled my eyes and handed him the money. When Nicky walked over to the man and bent down and gave it to him—well, that image of my son, who is now thirty-five years old and six feet, two inches tall, still stays with me and touches me. It really is the core of who he is.

Nicky has, and has always had, a strong work ethic. Over the years, we've had lunches during the week and we discuss what he is doing and my work as a producer of television commercials. Since I've always owned my own production company, taking a long lunch was never a problem for me, but Nicky would frequently have to cut me off to remind me that he had to get back to work. He has always been very diligent about putting in more than he was asked for at work. He never wanted to cut his company

short, and feels a deep commitment to his work. I am proud of him for that. His boss (and good friend) Marat, whom I've met many times, always exclaims how he " just loves Nicky. What an asset he is," and "What a great friend he has become to me and my wife." Hearing these sentiments moves me and shows me the Nicky that I see is the one his friends see, a kind of achievement that comes from within. Going to school at the American University of Paris for two and half years, and returning home to graduate from Columbia are accomplishments of a different sort, impressive and gratifying for me as a parent, but no more important than his achievements as a human being.

I know the charges brought against Nicky—as gut wrenching and heart breaking as they have been for my family and me--do not reflect the man he is. I strongly believe that these past months of being embroiled in a world he never imagined inhabiting have shaken him to his core and made him examine his poor judgment and the impact it has had on all of us who know and love him. I am convinced, after many long conversations with my son, that he understands what he did, is profoundly sorry for it and that his future life will be lived as a law-abiding citizen respecting the values of both society and the people who care so very much for him. He is a decent, honorable man—a man I am proud to call my son—A MENSCH—as they say where I come from.

Respectfully submitted,

Barry J. Hirsh

# EXHIBIT J

January 28, 2014

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 1105
New York, NY 10007

Re: United States v. Nicholas Hirsch, 13 Cr. 268 (JMF)

Dear Judge Furman:

I am writing to you as the mother of Nicky Hirsch, my second son and middle child.

To tell you a little about myself, I have worked in the publishing business for most of
my adult life.  I started out as an actress, attending Boston University as a theatre
major.  After three years, I left school and returned to New York to pursue an acting
career and met my husband in an off-Broadway play.  During that time I also worked
part-time at Grolier Encyclopedias and after Barry and I married, I found work as an
editor of movie magazines.  Later I was the editorial director of Hearst Magazines
Special Publications Division.  After Brian (my oldest son) and Nicky were born, I
left Hearst to start my own book packaging company, Lamppost Press.  I also
authored a book, "The Super Working Mom's Handbook," published by Warner's.

It has been my experience that it is impossible for a mother to love one child more
than another.  Each of my children, no matter how old, inhabits a unique niche in my
psyche.  With Nicky, though, there is a certain comfort level I feel with him.  It may
be a result of his unerring ability to get along with people—a skill he developed
from being the "man in the middle," as I used to call him when he was a child
bemoaning the fact that he did not have the privileges of his older brother or the
attention that his younger brother demanded.

I always told Nicky that he would grow up getting along with everyone, and he has
done that beyond my wildest imagination.  Nicky's has amassed an amazing support
network of friends whom he cherishes, and who love him as the loyal, honest, and
compassionate man I have seen him grow up to be.  (Nicky's good humor also
surprises me endlessly.  When he had his Bar Mitzvah, he stood at the bema and
announced to the congregation, "My mom converted to Judaism when she married
my Dad, otherwise I couldn't be here.  I thank her for that.")

Nicky's compassion for others may be best illustrated by the way he cares for his
roommate, Gerard, who suffers from epilepsy.  Nicky has been a staunch friend to
Gerard, particularly during those times when Gerard has seizures.  One Sunday

morning Gerard suffered a seizure while in a locked bathroom in their apartment. Nicky heard Gerard thrashing around and literally ripped the doorframe off the wall to get Gerard out.  Then he called EMS, called Gerard's parents, who were out of state for the weekend, and he took care of his friend until help arrived.  His caring nature is something of which I am particularly proud.

Perhaps the key to Nicky's success – the reason so many people treasure his friendship – is his uncompromising sense of personality integrity: he is who he is, no matter whom he is with, and he does not reinvent himself to impress others, something I admire greatly.  To put it simply, he is not a phony.  I have seen how well this has served him in the past, and I have no doubt that it play an important role in his future.

It is his sense of personal integrity, his belief in being true to himself, that sets Nicky apart, and there is no better example than my own college experience.  In 1998, I enrolled at Columbia University and after six years, I graduated cum laude with a degree in art history.  I tell you this because while I was there, Nicky came home from France after two and a half years at the American University of Paris and finished college at Columbia.

Going to school when you are in your fifties with your twenty-something son was an experience I will always cherish.  As you can imagine, it was a circumstance that could have presented tremendous challenges, but not when your son is Nicky Hirsch.  At first, Nicky would run into me on campus and (especially if he was with a friend) look a little anxious about having to introduce his mother to his classmate.  But after a short while, he began to embrace the experience.  He invited me to study groups and involved me in activities.  He gave me the love of a son, but also the respect and friendship of a colleague.  I think that is why so many people love Nicky; he treats them with dignity and respect, no matter who they are.

Our relationship took a different turn from that time onward.  We had, and continue to have, a more collegial, adult relationship that is special to both of us.  He seeks my advice and shares his problems and anxieties with me. Certainly, in the days since April 15th of this past year, when the FBI came knocking on his door at six in the morning, his anxiety level has risen exponentially.  We have had moments together when he cried, and shared his fears for his future.  He told me he has replayed everything in his mind that led to his arrest, and how accepting his guilt has been a painful, but healing, process.  I believe his remorse is genuine and deeply felt.  I, more than anyone, perhaps, know that Nicky has a certain inner strength that I am confident will allow him to go forward as a productive and fulfilled human being. An arrest and a felony conviction have to be transformative events in anyone's life.  For Nicky, my most beloved son, it has been that, plus a sobering wake-up that the actions that led to this will never happen again.  I hope and pray you will show leniency by not imposing any jail time.  I know he is capable of giving back to society in ways that will exceed the damage that has been done.  My son is respected and

loved by his friends, as well as by his family.  He is a man of good character and I know he will live his life with integrity and honor.

Thank you for your consideration.

Most sincerely,

Roseann Conte Hirsch

# EXHIBIT K

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 1105
New York, NY 10007

      Re:   United States v. Nicholas Hirsch, 13 Cr. 268 (JMF)

Dear Judge Furman:

My name is Brian Hirsch and Nicholas Hirsch is my little brother.

When I was asked to write this letter I immediately thought of the task as a sort of gift because it gave me the opportunity to do what I do far too infrequently: to stop and ponder on all of the wonderful, loving, funny, fascinating, kind and genuinely special qualities of my brother Nicky, who I love, respect, appreciate and admire more than these words can express. However, as I thought about it, it also forced me to confront the reality that, as special a person as I know him to be, he isn't without his flaws, apparently. Truth be told, I was flabbergasted by the charges against him. I literally found it hard to comprehend that my brother Nick, of all people, was charged with and found guilty under law of fraud. To this moment I grapple with that incongruity. In my lifetime of experience, my brother Nicky has always served as an example of integrity and honor. So this incident in my family life has really confounded me. It's just so wildly uncharacteristic.

Throughout his childhood Nicky always exhibited a genuinely warm and compassionate heart. I cannot count the number times, from his early youth and throughout his teens, when we'd be walking down the city streets and Nick would express a certain sadness at the sight of New York's homeless. When he was a little kid he'd often ask my parents for a dollar so he could run up and give it to a person less fortunate, chat with him, then return and, in his young innocence, ask us why some people in the world had it so rough. The suffering of others always troubled Nicky; he was always pulling for the underdog. My parents and I often took note of the depth of compassion and sympathy he had for those less fortunate, and I remember my parents frequently commenting on how proud his small acts of kindness made them feel. They made me feel proud too. Even though I was seven years his senior, I learned from his sensitivity and took it as a lesson in my own life, as I continue to do today.

Nicky's concern for the suffering and misfortune of others has never ceased and it continues in his adult life. There have been several recent Christmas-time holidays when Nicky would forgo the lavish vacations that his friends often invite him on, to instead participate in volunteer work at New York Hospital, where Nicky was born. On a regular basis Nicky also attends to the needs of his dear friend and roommate Gerard, who's chronically epileptic. And, in fact, there have been instances when this attendance was critical.

In addition to Gerard, Nicky's warmth and generosity has garnered him many close and dear friends. I'm constantly meeting new people in Nicky's life, and they always go out of their way to tell me how much they love Nicky. One of the most heartening things to come of this difficult experience has been to see all of the loyal and loving friends that have rallied to his side. That in itself has consoled me in the knowledge that whatever the outcome of his sentencing, Nicky's future will be a bright one.

I'm a better man for knowing my brother Nicky. He has counseled me throughout my every difficulty and triumph in life, and I thank God for my brother's love and support every day. Sometimes it's not easy living on the other side of the country from where my family is, so I've come to rely on Nicky for taking care of my parents and watching out for our youngest brother Jonathan. He has always and continues to perform this family duty with compassion and dedication.

Even through this whole ordeal, I've been immensely impressed with Nicky's sober, clear thinking; especially with his maturity and ownership of the matter. Nicky knows he broke the law, and also that what he did simply isn't ethical. When I first heard of this whole mess I was, as I said earlier, truly flabbergasted. Never in my wildest dreams would I have imagined that my brother could be involved in anything not aboveboard, let alone outright illegal. I've talked with Nicky at length many times about this subject since his arrest and I know he's genuinely regretful of his actions in this case.

But despite this unfortunate and uncharacteristic lapse in my brother's judgment, I am confident Nicky will learn for this experience and use it to continue to enrich the world around him. I know him to be the kind of man who will use this event as an opportunity to grow. I sincerely hope that the court can show leniency for this special man, who I'm proud and so lucky to call my brother.

Respectfully submitted,

Brian Hirsch

cc:    Craig Carpenito, Esq.
       Harris Fischman, Assistant U.S. Attorney

# EXHIBIT L

December 29th 2013

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 1105
New York, NY 10007

    Re:   United States v. Nicholas Hirsch, 13 Cr. 268 (JMF)

Dear Judge Furman:

My name is Gerard Jeffrey and I am writing this letter on behalf of Nicholas Hirsch as a testament to his personality and character. I also write to detail a friendship that goes back almost 30 years covering aspects of life both personal and professional.

My life has always had its roots in New York City, just as Nicholas's has. I was born, raised and attended school on the Upper East Side of Manhattan. Starting at the age of nine, I attended summer camp in the Adirondack Mountains for seven years as a camper. I then worked at the camp for an additional seven years as a counselor.
Since graduating from Vanderbilt University in 1999, my primary business has been in real estate. I work in the family business, but I also pursue real estate opportunities independently.

Nicholas and I attended the same school starting in nursery school and kindergarten, respectively. We also attended the same summer camp from the very beginning. Besides this very unique connection, our families have also grown extremely close over the years and, to this day, spend many holidays together. Nicholas and I have lived together for the last decade, more as brothers than as friends.

In addition to being a dear friend, Nicholas plays another very important role in my life. At the age of thirteen I was diagnosed with epilepsy, which, as you may know, causes unpredictable and severe seizures. For the last decade, Nicholas has been my caretaker and, at times, my savior.

I suffer from Tonic–clonic seizures (formerly known as grand mal seizures), which are typically brought on by sleep deprivation. I am under the regular care of one of the foremost medical experts in this field. In large part, I am able to control the onset of my seizures with medication. There are instances, however, when I have had seizures over the years regardless of the methods taken to control them. The different instances vary but the results are the same. When I have a seizure the potential for injury is great, and it is critical that those around me know how to manage the situation.

Although extremely disturbing, the seizures themselves are not particularly dangerous. Because of the complete loss of physical and mental control, though, the potential for related injury is extreme. A seizure will cause me to collapse helplessly with no warning. During this time, I will be unable to speak and I will be completely unaware of my surroundings. It will usually take thirty minutes to an hour for me to regain full

consciousness. During this time, I will be unable to answer the most basic questions as my speech slowly returns.

I have had seizures at my parents' home, in my current residence, and in public. Unfortunately, I have found that the great majority of people are ill-equipped to provide assistance when I have a seizure. I have always been upfront with people, telling them about my epilepsy and what to do if something happens to me. But only time and experience can really prepare a person for dealing with the actual situation. It is for this reason that I must choose my companions carefully, as at any moment, my life may be their hands.

Many years ago, when my last roommate moved out, I was faced with a serious dilemma: I needed a new roommate who was caring and intelligent, who I could trust unconditionally, and who would be willing to take on the responsibility of coming to my aid when needed. Nicholas Hirsch was the obvious choice, and he has embraced the role completely. In the decade that we have lived together, I have had a number of significant seizures. I detail some of them now only to illustrate the kind, caring, and loving person Nicholas Hirsch is, and to show you how important he is to me.

I once had a seizure in our living room, during which I fell and broke two ribs on a radiator. Nicholas secured me from further danger, placed a pillow under my head and, when I regained consciousness, rushed me to the closest hospital. I had a seizure in my bedroom one evening and Nicholas, hearing the unmistakable sounds of a seizure, proceeded to break down the locked door to make sure that I would not injure myself. He put me in my bed after finding me on the floor and stayed with me until I regained total consciousness. I once had a seizure in my bathroom, and Nicholas again had to break down the door to rescue me.

I had a seizure in my apartment elevator that left me wandering around semi-conscious until Nicholas heard and found me quickly in the hall where I could have easily fallen down the stairs, which are right outside our door. Twice I have had seizures at home while Nicholas was out. Both times he has raced home once I was able to regain sufficient control to dial his telephone number but still unable to speak properly. Recently, I had a seizure and in doing so knocked down a mirror in our living room. Finding me among the shattered glass, Nicholas moved me to the couch where he made sure I could regain full consciousness in safety.

Nicholas is one of the few people I can truly rely on, and I trust him with my life.

I trust that it is now apparent how close Nicholas and I are, and how much I rely on him as a friend and as caregiver. Let me take a moment now to express to you, as perhaps no one else can, how aberrational Nicholas's misguided conduct is. Although Nicholas takes full responsibility for his conduct, I have never known him to break the law in any way. For that matter, I have never known Nicholas to hurt someone. That just is not the type of person he is, and although cliché, it is not the way we were raised.

Seeing how an individual deals with adversity provides an insightful and profound glimpse into their character. As Nicholas's friend and roommate, I was in a unique position to see how these events affected him firsthand. Nicholas took responsibility for his conduct immediately. Within hours of being released after his arrest, Nicholas picked up the telephone and began making the most difficult telephone calls of his life. He called his

mother and father, both in their seventies, and gave them the unvarnished truth. He then called his brother in California and his closest friends, and he explained the entire chain of events that led to his arrest. The following day Nicholas made another gut wrenching telephone call, this time to his employer. I listened as he detailed his conduct and offered his resignation.

Nicholas had worked in the financial industry since the day he graduated from Columbia. He was once was trusted to operate a critical division of a financial institution and was on the verge of getting a significant new job in the financial industry when he was arrested. He has since lost that opportunity and has lost the ability to work in the financial industry forever. I have learned since childhood that in life your reputation is everything. Conveying to people that they can trust you and that you are a person of high regard is priceless. Once you have lost that, it is nearly impossible to regain it. Nicholas has lost everything as a result of his conduct.

Now, his career lies in real estate. I have always relied on Nicholas's judgment in personal and business affairs, and I will continue to do so after this incident is behind us. With this Court's permission, he will start working with me in my real estate business after he is sentenced. I have no doubt that he will be a success. He is intelligent, knowledgeable in business, and is surrounded by friends and family who trust him and have not been swayed by one terrible decision.

For Nicholas's sake, and for mine, I very much hope you look favorably on him in your decision regarding his sentence. Regardless of your decision, I assure you that neither you nor any other judge will ever see him again.

Respectfully Submitted,

Gerard Jeffrey

cc: Craig Carpenito, Esq
    Harris Fischman Assistant U.S. Attorney

# EXHIBIT M

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 1105
New York, NY 10007

     re:   United States v. Nicholas Hirsch, 13 Cr. 268 (JMF)

Dear Judge Furman,

My name is Deanna Miller. I am a self-employed fashion model. I have known Nicholas Hirsch for 12 years. We dated for about a year and have remained close friends ever since. I can confirm that he is a man of great integrity. He is extremely dedicated to his family, friends, and work.

Nicky is very loyal and dependable. He is one of the few people that I can always turn to for support and advice. A few years ago I was in a relationship with a man that had a problem with alcohol. Nicky sat with me and listened to all my concerns and worries about this troubled relationship. Despite the fact that Nicky and I had dated, he never tried to compare himself favorably. He was never judgmental of my boyfriend and my situation. I can honestly say that Nicky genuinely wanted to listen and help me, instead of being selfish which many ex-boyfriends may tend to do. Nicky didn't put himself first, but honestly looked out for me. Thanks to Nicky's great advice the problem has completely evaporated. I am now in a very healthy relationship and we have a beautiful child thanks to Nicky.

Furthermore, Nicky has great family values. He is very close with his parents and his brothers. In my opinion this says a lot about someone's character.

I understand that Nicky is being charged with fraud. He is very upset about the charge, and I believe he is truly sorry for all of this. It has affected his work and created a sadness in Nicky's voice that I have never known him to have.

I can say in all the years that I've known him, Nicky has been a hardworking, decent, and trustworthy person. I believe any behavior he has displayed that caused him to be charged with fraud is completely out of character.

Thank you for taking time to read this letter. I hope that I was able to shed some light on the true character of my good friend Nicholas Hirsch.

Respectfully submitted,

Deanna Miller

cc:   Craig Carpenito, Esq.
      Harris Fischman, Assistant U.S. Attorney